

**FILED**

AUG 2 5 2017

Clerk, U.S. District Court
District Of Montana
Billings

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| R. MICHAEL PRICE,<br><br>        Plaintiff,<br><br>        v.<br><br>US BANK, N.A.,<br><br>        Defendant. | Cause No. CV-17-36-BLG-SPW<br><br>OPINION AND ORDER |

Before the Court is Plaintiff R. Michael's Price's motion to excuse or suspend performance (Doc. 18) and Defendant US Bank's motion to dismiss for failure to state a claim (Doc. 20). For the foregoing reasons, the Court DENIES both motions.

## I. Facts alleged in amended complaint

On August 4, 2009, Price signed a Term Loan Agreement and Promissory Note ("Term Note") with US Bank. (Doc. 3-1 at 12). The Term Note was secured by an Arizona Deed of Trust, Security Agreement, and Assignment of Rents for property located in Mohave County, Arizona ("Primary Collateral"). (Doc. 3 at ¶ 10).

On April 4, 2010, US Bank filed a complaint against Price in federal court, alleging Price had defaulted on the Term Note. (Doc. 3 at ¶ 10). On July 26, 2010,

Price filed a complaint against US Bank in state court, alleging US Bank had wrongfully instituted foreclosure proceedings against the Primary Collateral. (Doc. 3 at ¶ 11). US Bank removed the state court action to federal court and the cases were consolidated. (Doc. 3 at ¶¶ 12-14). Price and US Bank entered into a settlement agreement ("Agreement") prior to trial. (Doc. 3 at ¶ 15). Pursuant to the Agreement, Price and US Bank executed a Letter Loan Agreement, a new promissory note ("Replacement Note"), an amendment to the Arizona Deed of Trust, and a Colorado Deed of Trust to secure the Replacement Note with additional property located in Douglas County, Colorado ("Secondary Collateral"). (Doc. 3 at ¶ 15).

The Colorado Deed of Trust provided that if the Secondary Collateral was sold, the cash proceeds would be held as "Cash Collateral" and deposited in a securities account as security for the Replacement Note. (Doc. 3-1 at 28). The Colorado Deed of Trust further provided:

> Upon sale and conversion to Cash Collateral, [US Bank] will, within a reasonable time, release that amount of the Cash Collateral that exceeds the amount required to maintain a loan-to-value ratio (expressed as a percentage) not in excess of 70% based on the then current principal balance of the Note and on the then current market value of all Collateral for the Note as determined in accordance with the Loan Agreement, including the Primary Collateral . . . thereafter, on January 1, 2012 and on January 1 of each succeeding year until the Note is paid in full, the Bank will recalculate the value to maintain a loan-to-value ratio (expressed as a percentage) not in excess of 70%

2

based on the then current balance of the Note and will release that
amount of Cash Collateral that exceeds such recalculated value.

(Doc. 3-1 at 28). Section 7 of the Letter Loan Agreement provided:

> Solely for the purposes of determining the amount of such Cash
> Collateral, the Primary Collateral will initially be valued according to
> the Lender's current appraisal of $1,390,000 . . . until [a developed
> parcel] of the Primary Collateral is sold or leased or an undeveloped
> parcel of the Primary Collateral is sold . . .

(Doc. 3-1 at 3-4).

In 2012, the Secondary Collateral was sold and converted to Cash Collateral equivalent to $850,000. (Doc. 3 at ¶ 22). Also in 2012, US Bank reappraised the Primary Collateral and valued it at $630,000. (Doc. 3 at ¶ 30). In January 2015, the principal balance of the Replacement Note was $1,430,000. (Doc. 3 at ¶ 23). In February 2015, the value of the Cash Collateral was $933,567.75. (Doc. 3 at ¶ 25). In 2015, 2016, and 2017, Price requested US Bank release the Cash Collateral in excess of the 70% loan-to-value ratio. (Doc. 3 at ¶¶ 27-29). Price maintained there was Cash Collateral in excess of the 70% loan-to-value ratio based on the combined value of the Cash Collateral and the value of the Primary Collateral set out in Article 7 of the Letter Loan Agreement. (Doc. 3 at ¶¶ 22-29).

US Bank refused to release any Cash Collateral. (Doc. 3 at ¶ 29). US Bank maintained there was no Cash Collateral in excess of the 70% loan-to-value ratio

based on the combined value of the Cash Collateral and US Bank's 2012 reappraisal of the Primary Collateral. (Doc. 3 at ¶¶ 27-30).

Price filed suit against US Bank, alleging breach of contract and fraud, among other claims. (Doc. 1 ¶¶ 38-84). Price subsequently filed a motion to excuse his performance under the contract. (Doc. 13). US Bank filed a motion to dismiss the complaint for failure to state a claim. (Doc. 20). The parties agree Montana law governs the interpretation of the contracts at issue.

## II. Motion to dismiss standard

A motion to dismiss for failure to state a claim is governed by Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. Price's motion to excuse or suspend performance

Price requests an order excusing or suspending his obligations under the contract. He argues he should not have to perform because, in his view, US Bank materially breached the contract. The Court denies Price's request because the issue is not properly before the Court.

The general rule is that a party that commits a material breach of a contract cannot maintain an action against the other party for a subsequent failure to perform an obligation under the contract. *Flaig v. Gramm*, 983 P.2d 396, 400 (Mont. 1999) (citing *Rogers v. Relyea*, 601 P.2d 37, 41 (Mont. 1979)). Thus, US Bank's alleged material breach is a legal defense Price may use if he elects to suspend his performance and US Bank sues for breach of contract. At this juncture, US Bank has not filed a counterclaim against Price for breach of contract and Price has not cited any law establishing the Court's power to excuse his failure to perform absent those circumstances or a request for a preliminary injunction. However, Price explicitly maintains he does not seek a preliminary injunction. (Doc. 31 at 9). Price's motion is denied.

## B. US Bank's motion to dismiss for failure to state a claim

US Bank's motion to dismiss turns on the interpretation of the Letter Loan Agreement and the Colorado Deed of Trust. US Bank argues the contracts entitle it, for purposes of calculating the Cash Collateral in excess of 70% of the loan-to-value ratio, to determine the value of the Primary Collateral based on the property's current market value. Price argues the contracts, for purposes of calculating the Cash Collateral in excess of 70% of the loan-to-value ratio, fix the value of the Primary Collateral at $1,390,000 until a parcel of the Primary Collateral is sold. The Court agrees with Price.

The interpretation and construction of a contract is a question of law. *Krajacich v. Great Falls Clinic, LLP*, 276 P.3d 922, 926 (Mont. 2012). "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Krajacich*, 276 P.3d at 926 (citing Mont. Code Ann. § 28-3-303). "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." *Performance Machinery Co., v. Yellowstone Mountain Club, LLC*, 169 P.3d 394, 399 (Mont. 2007) (citing Mont. Code An.. § 28-3-202). "Where the language of an agreement is clear and unambiguous and, as a result, susceptible to only one interpretation,

the duty of the court is to apply the language as written." *Performance Machinery Co.*, 169 P.3d at 399 (internal quotation and citation omitted).

The Letter Loan Agreement unambiguously states the Primary Collateral, for purposes of calculating the Cash Collateral in excess of 70% of the loan-to-value ratio, is $1,390,000 until a parcel of the Primary Collateral is sold:

> *Solely for the purposes of determining the amount of such Cash Collateral*, the Primary Collateral will initially be valued according to the Lender's current appraisal of $1,390,000 . . . *until* [a developed parcel] of the Primary Collateral is sold or leased or an undeveloped parcel of the Primary Collateral is sold . . .

(Doc. 3-1 at 3-4) (emphasis added). The phrase "solely for the purposes of determining the amount of such Cash Collateral" clearly limits the Letter Loan Agreement's $1,390,000 valuation to that purpose. The term "until" clearly means the Primary Collateral's value is $1,390,000—for purposes of calculating the Cash Collateral in excess of 70% of the loan-to-value ratio—up to the time a parcel of the Primary Collateral is sold. *Webster's New World Dictionary* 1464 (3rd ed. 1994).

The Colorado Deed of Trust does not create an ambiguity in the Letter Loan Agreement. The Colorado Deed of Trust unambiguously states the market value of the Primary Collateral, for purposes of calculating the Cash Collateral in excess of

70% of the loan-to-value ratio, is determined in accordance with the Letter Loan Agreement:

> Upon sale and conversion to Cash Collateral, [US Bank] will, within a reasonable time, release that amount of the Cash Collateral that exceeds the amount required to maintain a loan-to-value ratio (expressed as a percentage) not in excess of 70% based on the then current principal balance of the Note and on the then current market value of all Collateral for the Note *as determined in accordance with the Loan Agreement, including the Primary Collateral* . . .

(Doc. 3-1 at 28). The phrase "as determined in accordance with the Loan Agreement, including the Primary Collateral" clearly means the Letter Loan Agreement's valuation of the Primary Collateral provides the Colorado Deed of Trust's "then current market value" of the Primary Collateral. Although the phrase "then current market value" contemplates a future reappraisal, the Letter Loan Agreement similarly contemplates a future reappraisal, but not "until" a parcel of the Primary Collateral is sold. If no parcel of the Primary Collateral is sold, the Colorado Deed of Trust's "then current market value" of the Primary Collateral is $1,390,000 because that is the value "as determined in accordance with the Loan Agreement." If a parcel of the Primary Collateral is sold, and the Primary Collateral is reappraised, the Colorado Deed of Trust's "then current market value" of the Primary Collateral is the value determined by the reappraisal because that is the value "as determined in accordance with the Loan Agreement." In sum, the

Letter Loan Agreement's valuation of the Primary Collateral provides the Colorado Deed of Trust's "then current market value" of the Primary Collateral.

Taking the well-pleaded facts in complaint as true, the complaint does not fail to state a claim. The value of the Primary Collateral, for purposes of calculating the Cash Collateral in excess of 70% of the loan-to-value ratio, is $1,390,000 because a parcel of the Primary Collateral has not been sold. (Doc. 3 at ¶ 31). The value of the Cash Collateral is $933,567.75. (Doc. 3 at ¶ 25). The principal balance of the Replacement Note is $1,430,000. (Doc. 3 at ¶ 23). The combined value of $1,390,000 and $933,567.75 is in excess of the 70% loan-to-value ratio. (Doc. 3 at ¶ 26). In 2015, 2016, and 2017, Price requested US Bank release the Cash Collateral in excess of the 70% loan-to-value ratio. (Doc. 3 at ¶¶ 27-29). US Bank did not release the Cash Collateral in excess of the 70% loan-to-value ratio. (Doc. 3 at ¶¶ 27-29). The complaint does not fail to state a claim. US Bank concedes all of Price's claims are premised on US Bank's refusal to release the Cash Collateral. (Doc. 21 at 17).

### IV. Conclusion

Price's motion to excuse or suspend performance (Doc. 18) is DENIED and US Bank's motion to dismiss for failure to state a claim (Doc. 20) is DENIED.

Dated this 25th day of August, 2017.

_____
SUSAN P. WATTERS
United States District Judge